CR 01-331 ADM/AJB

**DAVID JAMES BOLL,**

being first duly sworn, was examined and testified as follows:

**DIRECT EXAMINATION**

BY MR. BROWN:

Q. Agent Boll, how are you employed?

A. I'm employed as a police officer by the City of St. Paul Police Department.

Q. What's your current duty assignment?

A. I'm assigned to the security detail at the mayor's office.

Q. Would you please tell the Court what your assignment was in October of 2001.

A [redacted].

Q. [redacted]?

A. [redacted].

Q. [redacted]?

A [redacted].

Q. How so?

A. We received information of an individual that was believed to be Gutierrez, was living in Burnsville, Minnesota.

Q. I'm going to direct your attention to October 11 of 2001. On that date, did you come into contact with Mr. Gutierrez?

A. Yes, I did.

Q. And tell the Court briefly how it was that you came into

contact with Mr. Gutierrez.

A[redacted]s De[redacted]ch [redacted] residence in Burnsville at 13831 [redacted]ourt.

Q. Subsequent to the execution of the search warrant, did you have any role in transporting the defendant to the Ramsey County jail?

A. Yes, I did.

Q. Could you describe for the Court how many members assisted you in escorting him to the jail?

A. One other member of the task force, that being FBI Special Agent Daniel Otterson, and myself transported Mr. Gutierrez to jail.

Q. Prior to the transportation of Mr. Gutierrez to the jail, did you or Agent Otterson ask any questions of the defendant pertaining to the facts of this case or the underlying facts of the warrant that you were executing?

A. We had asked him questions at the residence, just as to the nature of his identity and so on, while we informed him of the warrants that were in existence for his arrest.

Q. So you informed him of the warrants. Do you recall which jurisdiction the other warrant was from?

[redacted], [redacted].

about October 10th, October the 11th, did you have an occasion prior to the arrest of the defendant Mr. Gutierrez, what events occurred prior to you going to Mr. Gutierrez's home?

A. I had a meeting with Deputy Eastman and compared investigative notes regarding the case. I also did some planning over the telephone, had numerous conversations on the telephone.

Q. Now, with respect to the planning that you undertook, was there going to be an effort to execute a warrant on Mr. Gutierrez's residence?

A. Yes.

Q. And did you or the other officers meet at Mr. Gutierrez's residence to execute that warrant, or did you meet at some other location?

A. We met at a location of a nearby residence.

Q. And when you were at that meeting, that is your setup meeting, did you discuss your role, that is what roles that you and members of the task force were going to perform in the execution of the warrant versus the roles of the Ramsey County detectives?

A. Yes, we did.

Q. What role were the task force members going to undertake with respect to executing the warrant?

A. It was decided the task force members would compose an

will hear evidence from law enforcement officers as well as one forensic chemist to discuss some of the evidence in this particular case.

The United States believes that the evidence will show in this case that on or about October 10th of 2001, the defendant came under investigation by the Ramsey County law enforcement officials for narcotics trafficking. They began conducting an investigation in that particular case and identified where the defendant lived in the city of Burnsville and were able to secure a search warrant for his residence.

On October the 10th, the Ramsey County law enforcement officials, along with the FBI drug task force, executed a search warrant. During the course of the search of that home, the officers recovered from the defendant's home a little more than one kilo of methamphetamine.

Also recovered from that same backpack in the defendant's home was approximately a pound and a half of cocaine, a little over 600 grams of cocaine. The officers also recovered in the same backpack in the defendant's home approximately just a little under 400 grams of marijuana.

Those drugs and those narcotics form the basis of the charges against this defendant. You will hear evidence in this case and testimony in this case that the amounts of controlled substance that were seized from Mr. Gutierrez's

Day (2) of Tr



MR. BROWN: I don't have them in court, Your Honor.

THE COURT: You do have possession of them, they are downstairs?

MR. BROWN: That's correct.

THE COURT: These are 1992 convictions for distribution of controlled substances and money laundering?

MR. BROWN: Conspiracy to possess with an intent to distribute and money laundering.

THE COURT: As to those convictions, they are within the rules of 609, they appear to be within the time requirement, and they do clearly relate to -- they are felony level, I take it, offenses, they sound like they would be, punishable by over a year?

MR. BROWN: They are.

Judge Montgomery talking

[redacted]: -- and they are relevant given the defense here also satisfies me that in the event Mr. Gutierrez were to elect to testify that the Texas -- Western District of Texas 1992 events would be relevant and probative evidence under Rule 609 and I would allow those to be used for purposes of impeachment.

As to the Rule 404(b) evidence, that is, other evidence relating to the time and circumstances of the search and as [redacted] upon knowledge of [redacted]s on [redacted], it sounds to me that those would likely be

MR. GUTIERREZ: G-e-o-r-g-e, A-n-t-h-o-n-y, G-u-t-i-e-r-r-e-z.

THE COURT: Two R's?

MR. GUTIERREZ: Yes, ma'am.

THE COURT: All right. You may proceed.

MR. GUTIERREZ: Okay. Good afternoon, I think afternoon, ladies and gentlemen. I want to give you a synopsis of how I feel what happened that day and prior to that day.

First of all, I can't get any other witnesses here because this is kind of hard to -- I got some witnesses, but I couldn't get my chief witness. The reason why is because I felt that she could be in trouble or whatever, so that's the point there.

Number two, the way it all started is we had an apartment. It was in my father-in-law's name, Larry Forga. After we lived at the apartment my wife told me some disturbing things that Larry Forga did. He molested his 12-year-old daughter.

MR. BROWN: Objection to the relevance, Your Honor.

MR. GUTIERREZ: It has got to go with the case.

[redacted] and how -- your position regarding the facts of this case. We are not going to go long

Judge giving Jury Inst



the answers are evidence.

The defendant is not on trial for any conduct not specifically charged in the indictment. You are to determine whether or not the government has proven the guilt of the defendant for the charge in the indictment beyond a reasonable doubt. You are not called upon to return a verdict as to any other person or persons. So if the evidence in this face -- in this case convinces you beyond a reasonable doubt of the guilt of the defendant for the crime charged in the indictment, you should so find, even though you may believe one or more other unindicted persons are also guilty. But, if any reasonable doubt remains in your mind after an impartial consideration of all the evidence in this case, it is your duty to find the defendant not guilty.

Now, we've referred several times to the indictment in this case, and I'm going to read you the formal language of the indictment. It's captioned United States District Court, District of Minnesota, United States of America, plaintiff, versus George Anthony Gutierrez, a.k.a., or also known as Gregorio Antonio Gutierrez, defendant. The United States grand jury charges that, Count 1: [redacted], in the state and district of Minnesota, the defendant, George Anthony Gutierrez, also known as Gregorio Antonio Gutierrez, knowingly and intentionally

relevant as well and I would certainly allow you some latitude to pursue the events prior to that to see if they are impeaching of the testimony or not.

MR. BROWN: Yes, ma'am.

[redacted]: With regard to the final item, it sounds to me that that's largely contextual and I would have to hear the evidence and how that develops before I could finally determine the relevance of that.

So for sure, Mr. Gutierrez, you should be aware of the fact that I would allow the prior convictions in Texas to be inquired into by Mr. Brown and perhaps the 404(b) evidence, depending on how your testimony went, [redacted].

MR. GUTIERREZ: May I speak to my counsel?

THE COURT: Yes, you may.

(Discussion off the record.)

MR. GUTIERREZ: May I approach the bench, Your Honor?

THE COURT: We are outside the presence of the jury, so you can just come up here with Mr. Brown if you want to.

MR. GUTIERREZ: Since my wife was my chief witness here, I guess for lack of better words, can I at least tell the jury that she was going to testify but she

So I know it's hard, but let's get a new question in front of her.

BY MR. GUTIERREZ:

Q. Have you observed the kids drinking and partying?

MR. BROWN: Objection to the relevance, Your Honor.

Judge talking

[redacted]

BY MR. GUTIERREZ:

Q. The bottom line --

MR. GUTIERREZ: You guys got me this way and this way, I can't even make a decent question.

THE COURT: You can take a minute and think --

MR. GUTIERREZ: You're saying sustained. He objects to anything I even -- he is already going like this (indicating).

THE COURT: I have to enforce the rules, Mr. Gutierrez.

MR. GUTIERREZ: The rules --

THE COURT: Stop, be quiet for a minute. We will all sit here while you think. Take a few seconds to think and form your question.

MR. GUTIERREZ: All right.

THE COURT: There's plenty of time. Just think through what you want to say and ask the witness a

And there is a process by which you can distill the substances, the active ingredients in pseudophedrine, Sudafed as you were, into methamphetamine, and so all of those items were found in the defendant's home.

The evidence will show that the people who lived in the defendant's home were he and Miss Valerie Owens who he described as his wife, common law wife, and two young children.

At the close of the case, near the end of the case, we will also bring evidence to you by way of forensic science from the Minnesota Bureau of Criminal Apprehension, [redacted], [redacted].

[redacted]. Chemical analysis was made of the substances, and Mr. Lind will testify in fact that there were four packages that contained methamphetamine, one package that contained cocaine, one package that contained marijuana in this particular case.

That in a nut shell will be the case against the defendant. Again, three different counts. [redacted]. That in a nut shell is the government's case, and I look forward to presenting the evidence.

THE COURT: Mr. Gutierrez, would you like to give

possessed with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code Section 841.

Count 2 states: [redacted], in the state and district of Minnesota, the defendant, George Anthony Gutierrez, also known as Gregorio Antonio Gutierrez, knowingly and intentionally possessed with intent to distribute, more than 500 grams of a mixture and substance containing a detectable amount of cocaine, a schedule, a controlled substance in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1).

Count 3: [redacted], in the state and district of Minnesota, the defendant, George Anthony Gutierrez, also known as Gregorio Antonio Gutierrez, knowingly used and carried a firearm during and in relation to a drug trafficking crime, and possessed a firearm in furtherance of a drug trafficking crime, to wit, possession with intent to distribute a controlled substance for which he may be prosecuted in a court of the United States in violation of Title 18 United States Code Section 924. A true bill, and it's signed by the United States Attorney and the foreperson of the United States grand jury.

The indictment in this case charges that the defendant

2 PAGES ONLY

[illegible] 08-[illegible]-2004
[illegible] 10:47:[illegible]

[illegible] AT [illegible] 2004 -WD

[illegible]: 43840-080 NAME: [illegible], [illegible] ANTHONY

[illegible] NO..............: [illegible]
[illegible]................: [illegible]
UNIT................: [illegible]
[illegible]..........: NO

DATE OF BIRTH: [illegible]
QUARTERS.....: [illegible]
[illegible]: NO

PRE-RELEASE PREPARATION DATE: 03-[illegible]

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: [illegible]-2023 VIA GCT REL

------------------CURRENT JUDGMENT/WARRANT NO: 03[illegible] ------------------

COURT OF JURISDICTION...........: MINNESOTA
DOCKET NUMBER...................: 01-[illegible](ADM/AJB)
JUDGE...........................: MONTGOMERY
DATE SENTENCED/PROBATION IMPOSED: [illegible]
DATE COMMITTED..................: [illegible]-2003
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $[illegible].00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...: PROPERTY: NO SERVICES: NO AMOUNT: $00.00

------------------CURRENT OBLIGATION NO: 010 ------------------

OFFENSE CODE....: [illegible]
OFF/CHG: POSSESSION WITH INTENT TO DISTRIBUTE MORE THAN 500 GRAMS OF METHAMPHETAMINE (CT 1) - [illegible]

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: [illegible] MONTHS
TERM OF SUPERVISION............: [illegible] YEARS
[redacted]

[illegible] MORE PAGES TO FOLLOW . . .

8-31-2004

08-31-04

REGNO..: 43840-[illegible] NAME: [illegible], [illegible] ANTHONY

--------------------------CURRENT OBLIGATION NO: 020 --------------------------
OFFENSE CODE....: 391
OFF/CHG: POSSESSION WITH INTENT TO DISTRIBUTE MORE THAN 500 GRAMS OF
COCAINE [illegible] - [illegible]

SENTENCE PROCEDURE.............: 3559 [illegible] SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: 040 MONTHS
TERM OF SUPERVISION............: [illegible] YEARS
RELATIONSHIP OF THIS OBLIGATION
TO OTHERS FOR THE OFFENDER....: CC
[redacted]

--------------------------CURRENT OBLIGATION NO: 030 --------------------------
OFFENSE CODE....: 1[illegible]0
OFF/CHG: USE OF A FIREARM DURING A DRUG TRAFFICKING OFFENSE (CT 3 -
[illegible]

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: 60 MONTHS
TERM OF SUPERVISION............: [illegible] YEARS
RELATIONSHIP OF THIS OBLIGATION
TO OTHERS FOR THE OFFENDER....: CS
[redacted]

--------------------------CURRENT JUDGMENT/WARRANT NO: 040 --------------------------

COURT OF JURISDICTION...........: MINNESOTA
DOCKET NUMBER...................: 02-[illegible](ADM/AJB)
JUDGE...........................: MONTGOMERY
DATE SENTENCED/PROBATION IMPOSED: 11-2[illegible]-2002
DATE COMMITTED..................: 01-10-2003
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $100.00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...: PROPERTY: NO SERVICES: NO AMOUNT: $00.00

G0002 MORE PAGES TO FOLLOW . . .

District Court

Dakota County
Judicial Center
1560 Highway 55
Hastings, MN 55033

K

Dakota
COUNTY

DATE RECIEVED

[redacted]

FEB 22, 2005

GEORGE ANTHONY GUTIERREZ #43840-
080
FEDERAL CORRECTIONAL INSTITUTE
PO BOX 1000
OXFORD WI 53952

53952+1000 S1

STATEMENT OF THE CASE AND FACTS

[redacted]. During the execution of the search warrant, law enforcement officers recovered, among other things, approximately 1,059 grams of methamphetamine, 642 grams of cocaine, 393 grams of marijuana, a loaded 9mm Glock handgun, and $4,753 in cash. [redacted]. On October 17, 2001 the defendant was charged in U.S. District Court by complaint and ordered detained.

The defendant was subsequently indicted by U.S. Grand Jury on November 14, 2001 in a three count indictment. Counts 1 and 2 charged possession with intent to distribute methamphetamine and cocaine; count 3 alleged the use of a firearm during and in relation to a drug trafficking crime.

Although initially represented by the Federal Public Defender's Office, the defendant elected to represent himself at trial. The court appointed standby counsel, Dean Grau, Esq. to provide help and advice to the defendant.

The defendant was convicted on March 21, 2002 after an approximately three-day trial. After filing motions for a new trial and mistrial, the defendant also requested the reappointment

of the Federal Public Defender, which motion was granted.

While awaiting his sentencing and the rulings on his various post-trial motions, the defendant escaped from custody in the Anoka County Jail on May 16, 2002. He remained a fugitive until his capture on July 13, 2002 in Fresno, California.

After denying his various post-trial motions, the district court sentenced the defendant\` on November 26, 2002 to a total of 300 months inprisonment. His timely appeal followed.

<u>THE OFFENSE</u>

[redacted] Trial Transcript ("Trial Tr.")(3/19/02) at 41-2. The search warrant was obtained after a controlled buy of ½ ounce of cocaine at the residence earlier on the same date. The controlled buy was made by a confidential informant, who was identified at trial. She was followed by officers to and from the defendant's residence. Trial Tr.(III B)at 7-20. Other than the defendant and his wife, no other adults lived in the home. Trial Tr. (3/19/02) at 103.

The evidence obtained against the defendant during the search was overwhelming. The officers seized from the defendant's person: (1) a false Mexican driver's license in the name of Juan Antonio Leon Garza with the defendant's picture on it; (2) an Oklahoma driver's license, in the name of Georgio Gutierrez with the defendant's picture on it and (3) $750 in cash. Trial Tr. (3/19/02) at 44. $500 of the $753 recovered from the defendant's

#53

STATE OF MINNESOTA DISTRICT COURT

COUNTY OF DAKOTA CITY OF BURNSVILLE

| | | |
|---|---|---|
| STATE OF MINNESOTA ) | | APPLICATION FOR SEARCH WARRANT AND SUPPORTING AFFIDAVIT |
| ) | SS. | |
| COUNTY OF DAKOTA ) | | |

**DEPUTY PETER JAMES EASTMAN** being first duly sworn upon oath, hereby makes application to this court for a warrant to search the (premises) (motor vehicle) (person) hereinafter described, for the property and things hereinafter described.

Your affiant knows the contents of this application and supporting affidavit, and the statements herein are true of his own knowledge, save as to such as are herein stated on information and belief, and as to those he believes them to be true.

Your affiant has good reason to believe, and does believe, that the following property and things, to wit:
**COCAINE/METHAMPHETAMINE,** papers, invoices, billings, charge plates, letters or other items which would indicated the owner/renter/occupant of the premise. Moneys, bankbooks, bank statements and other items used or maintained which would show profit of sale. Weapons or guns, scales, paraphernalia and other items used for distribution or consumption of controlled substances. Other controlled substances contained in the Controlled Substance Laws. Photographs, address/phone books, pagers scanning devices, safe deposit box keys. Telephone numbers, messages, and stored electronic communications, that will become terminated in and stored in electronic paging devices. Automatic telephone answering machines and all associated equipment including tape cassettes and other magnetic media used to store dictated notes of telephone messages, and caller identification units.

(are) (will be)
(at the premises) (in the motor vehicle) (on the person) described as:
**13831 Echo Park Court, Burnsville, Minnesota, a single family residence, to include any and all rented property associated with 13831 Echo Park Court, Burnsville, Minnesota.**
**Texas license plate M22KXG, a green colored, 1995, Ford station wagon.**
**George Anthony Gutierrez, DOB: 05/04/55 a Hispanic male.**

Situated in the City of **Burnsville**, County of **Dakota**, State of **Minnesota**.

Your affiant applies for issuance of a search warrant upon the following grounds: (Strike inapplicable paragraph)

1. ~~The property above described was stolen or embezzled.~~
2. The property above described was used as means of committing a crime.
3. The possession of the property above described constitutes a crime.
4. The property above described is in the possession of a person with intent to use such property as a means of committing a crime.
5. The property above-described constitutes evidence which tends to show crime has been committed, or tends to show that a particular person has committed a crime.

REC'D OCT 16 2001

FILED DAKOTA COUNTY
VAN A. BROSTROM, Court Administrator
OCT 16 2001 10:15 am
BY [signature] DEPUTY

Your affiant is a Deputy Sheriff employed by the Ramsey County Sheriff's Department and has been so employed for the past 18 years. Your affiant is currently assigned to the Ramsey County/St. Paul Narcotics Task Force, and has been working in this capacity since July 1993. During the course of your affiant's assigned duties, your affiant has investigated numerous narcotic cases. Your affiant has also attended numerous, state, and local schools relating to narcotic investigations.

Your affiant has had the occasion to meet a Confidential Reliable Informant, (CRI), who has provided your affiant with information that through independent corroboration, has proven to be true and correct. Your affiant also knows that the CRI has provided information to law enforcement in the past, that has lead to the arrests and convictions of numerous felony narcotics violators. On this occasion the CRI informed your affiant about the sale of Cocaine and Methamphetamine by a Hispanic male known to the CRI as Tony. The CRI stated that Tony is a Hispanic male in his middle 40's with bleached hair and numerous tattoos on his arms. The CRI states that Tony and his wife Maria are currently residing at the address of 13831 Echo Park Court, Burnsville, Minnesota, with their two young children. The CRI stated that the CRI would call the phone number of (651) 216-3755, when the CRI needs to speak with Tony or Maria. The CRI also stated that Tony and Maria own and drive a green station wagon with Texas plate M22KXG.

Your affiant believes that Tony is George Anthony Gutierrez, DOB: 05/04/55. Your affiant obtained a photo of George Anthony Gutierrez, DOB: 05/04/55, from Officer Dave Boll, of the Federal Bureau of Investigations, (FBI), Fugitive Task Force, and showed it to the CRI. The CRI stated that the photo was of the same person that the CRI knows as Tony.

Your affiant has had the occasion to meet with the CRI for the purpose of making a controlled buy of Cocaine from George Anthony Gutierrez, DOB: 05/04/55. The controlled buy was conducted in the following manner: The CRI called the phone number of (651) 216-3755. The CRI advised Tony that the CRI wanted to buy some Cocaine. The CRI stated that Tony instructed the CRI to come to his residence, where he would sell the CRI a quantity of Cocaine. Your affiant determined that the CRI had no other controlled substances, and/or money on the CRI's person, or in the CRI's vehicle. The CRI was then given a quantity of pre-recorded Ramsey County buy fund money.

Surveillance was maintained on the CRI to the residence of 13831 Echo Park Court, Burnsville, Minnesota. Surveillance observed the CRI knock and then enter the address of 13831 Echo Park Court. A short time late surveillance observed Texas plate M22KXG enter the garage of the residence using the electric garage door opener, driven by a Hispanic male. A short time later surveillance observed the CRI exiting the residence of 13831 Echo Park Court, Burnsville, Minnesota.

Surveillance was maintained on the CRI to a pre-determined meet location, where the CRI turned over to you affiant a quantity of Cocaine. The CRI stated that the Cocaine had been purchased from the individual know to the CRI as Tony. Your affiant again determined that the CRI had no other controlled substances and/or money on the CRI's person, or in the CRI's vehicle.

The CRI stated that Tony has on numerous occasions offered to sell the CRI large amounts of Cocaine and/or Methamphetamine. The CRI also stated that the CRI has observed Tony in possession of large amounts of Cocaine and/or Methamphetamine, which Tony purported to be for sale. These observations have occurred in the last three weeks.

Your affiant conducted a field test on a sample of the suspected Cocaine, in which the chemical reaction indicated a positive reaction for the presence of Cocaine. Your affiant knows that this controlled buy of Cocaine, and the test of the same Cocaine. Was done in the last 72 hours. Your affiant also knows that the CRI has correctly identified both Cocaine and Methamphetamine numerous times over the last 2 years.

Your affiant spoke with Officer Dave Boll, of the FBI Fugitive Task Force [redacted], who advised that his office was looking to pick up George Anthony Gutierrez, DOB: 05/04/55, on out-standing warrants. Officer Boll advised that Gutierrez had an active warrant with the United States Custom Service for Cocaine, and an active warrant with the United States Marshall's Service out of Arlington Texas for the sale of Cocaine. Officer Boll went on to state that he had received information from a confidential informant, (CI), that Gutierrez was living at the Berkshire townhouse community in Burnsville, Minnesota. Your affiant knows that the address of 13831 Echo Park Court, is in fact the Berkshire townhouse community. Officer Boll also advised that the CI stated to the CI that he was wanted by Federal authorities. Officer Boll advised that the CI stated that Gutierrez always carried a 9mm Glock handgun.

Your affiant checked with Dakota County Electric and found that Larry C Forga is the individual being billed for power at the address of 13831 Echo Park Court, Burnsville, Minnesota. Your affiant also checked with Sprint Communications and found that Lawrence Forga, at 13831 Echo Park Court Burnsville, Minnesota, is the party being billed for the phone number of (651) 216-3755. Your affiant also found that Texas plate M22KXG, lists to a 1995 Ford, and Ruby Gutierrez at 1015 W Winnipeg, San Antonio, Texas.

Your affiant knows through his training and experience that it is common for individuals who traffic in controlled substances to do so from their place of residence as well as on the street. Your affiant believes that George Anthony Gutierrez, DOB: 05/04/55, (Tony), is involved in the distribution of Cocaine and Methamphetamine in the Twin Cities area. Your affiant also knows that it is common for individuals that distribute controlled substances, and those who are wanted by law enforcement, to use other names then their given names when renting residences, using sell phones, and registering their vehicles. Your affiant asks the courts permission to search the residence, vehicle, and person, for controlled substances, and evidence of the sale of controlled substances.

Your affiant requests that the identity of the CRI remain confidential as your affiant believes that the CRI would be in danger of great bodily harm if the CRI's true identity were known.

Your affiant, based on his/her training and experience, requests this warrant to include the following items:

1. Documents - frequently, persons involved in drug transactions maintain records of their activities.
2. Weapons and guns - on numerous occasions, the same are used to facilitate the control over and/or distribution of controlled substances.
3. All other drugs - (contained in the Controlled Substance Law) - as on most occasions, drugs other than those specifically noted are often found.
4. Pagers and scanning devices - as those items are frequently used to facilitate drug transactions, and are commonly found to contain stored electronic data indicating the telephone number of known sources and/or customers associated in the trafficking of controlled substances.
5. Personal address/phone books - as those items frequently contain names, addresses, and phone numbers of the subjects customers, source of supply, or other known drug violators.
6. Photographs - as these are frequently found showing the subject(s) association with other known drug violators or acts of using controlled substances. 7. Safe deposit keys - as these are frequently found that show where profits from sale of controlled substances may be located. Subjects commonly use deposit boxes to conceal/secure controlled substances.
8. Scales and drug paraphernalia - as on most occasions, same are found showing consumption and/or distribution of controlled substances.
9. Automatic telephone answering machines and associated equipment, including stored magnetic data - as on most occasions, controlled substance traffickers commonly receive incoming calls and/or place outgoing calls stored on magnetic tape indicating there association with other known narcotic traffickers.
10. US currency-may show proceeds from drug transactions.

A nighttime search outside the hours of 7 a.m. and 8 p.m. is necessary to prevent the loss, destruction or removal of the objects of the search or to protect the searchers or the public because:
Your affiant's past experience in executing narcotic search warrants has shown that attempts are inevitably made to destroy evidence and/or interfere with the executing officers when preannounce presence of the police is known. Approach to and entry of 113831 Echo Park Court, Burnsville, Minnesota, can be made easier and safer by executing officers under the cover of darkness, and due to the late hours in which the CRI states controlled substance violations are taking place, the CI's information that Gutierrez carries a 9mm handgun, and the fact that Gutierrez has two active Federal warrants.

An unannounced entry is necessary to prevent the loss, destruction or removal of the objects of said search, (and), to protect the safety of the peace officers, because:
Your affiant's past experience in executing narcotic search warrants has shown that attempts are inevitably made by drug traffickers and/or users, to destroy evidence and/or interfere with executing officers when preannounced presence of the police is known. An unannounced entry is requested to ensure the safety of executing officers based on the aforementioned information contained in the affidavit, and the reasons listed above in the request for a search outside the hours of 7 a.m. and 8 p.m.

WHEREFORE, your affiant request a search warrant be issued, commanding **DEPUTY PETER JAMES EASTMAN, OFFICER DAWN JOHNSON,** and officers under your direction and control (a) peace officer(s), of the State of Minnesota, (to enter without announcement of authority and purpose) (between the hours of 7 a.m. to 8 p.m.) (and a nighttime search outside of those hours) to search the herein before described (premises) (motor vehicle) (person) for the described property and things and to seize said property and things and keep said property and things in custody until the same be dealt with according to law.

Affiant

Subscribed and sworn to before me this
[redacted]

Judge of District Court
[redacted]

STATE OF MINNESOTA — DISTRICT COURT

COUNTY OF DAKOTA — CITY BURNSVILLE

# SEARCH WARRANT

To: **DEPUTY PETER JAMES EASTMAN, OFFICER DAWN JOHNSON,** AND OFFICERS UNDER YOUR DIRECTION AND CONTROL (A) PEACE OFFICERS(S) OF THE STATE OF MINNESOTA.

WHEREAS, **DEPUTY PETER JAMES EASTMAN** has this day on oath, made application to the said Court applying for issuance of a search warrant to search the following described (premises) (motor vehicle) (person):
**13831 Echo Park Court, Burnsville, Minnesota, a multiple single family residence , to include any and all rented property associated with 13831 Echo Park Court, Burnsville, Minnesota.**
**Texas license plate M22KXG, a green colored, 1995, Ford station wagon.**
**Victor, a Hispanic male middle 20's, 5'06, 135lbs.**
**George Anthony Gutierrez, DOB: 05/04/55, a Hispanic male.**

for the following described property and things:

> **COCAINE/METHAMPHETAMINE,** papers, invoices, billings, charge plates, letters or other items which would indicated the owner/renter/occupant of the premise. Moneys, bankbooks, bank statements and other items used or maintained which would show profit of sale. Weapons or guns, scales, paraphernalia and other items used for distribution or consumption of controlled substances. Other controlled substances contained in the Controlled Substance Laws. Photographs, address/phone books, pagers scanning devices, safe deposit box keys. Telephone numbers, messages, and stored electronic communications, that will become terminated in and stored in electronic paging devices. Automatic telephone answering machines and all associated equipment including tape cassettes and other magnetic media used to store dictated notes of telephone messages, and caller identification units.

WHEREAS, the application and supporting affidavit of **DEPUTY PETER JAMES EASTMAN**(was) (were) duly presented and read by the Court, and being fully advised in the premises.
NOW, THEREFORE, the Court finds that probable cause exists for the issuance of a search warrant upon the following grounds: (Strike inapplicable paragraphs)

1. ~~The property above-described was stolen or embezzled.~~
2. The property above-described was used as a means of committing a crime.
3. The possession of the property above-described constitutes a crime.
4. The property above-described is in the possession of a person with intent to use such property as a means of committing a crime.
5. The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.

The Court further finds that probable cause exists to believe that the above-described property and things (are) (will be) (at the above-described premises) (in the above-described motor vehicle) (on the person as above).
(The Court further finds that a nighttime search outside the hours of 7 a.m. to 8 p.m. is necessary to prevent the loss, destruction, or removal of the objects of said search, or to protect the searchers or the public).
(The Court further finds that entry without announcement of authority or purpose is necessary [to prevent the loss, destruction or removal of the objects of said search] [and] [to protect the safety of the peace officers]).

NOW, THEREFORE, YOU **DEPUTY PETER JAMES EASTMAN, OFFICER DAWN JOHNSON** AND OFFICERS UNDER YOUR DIRECTION AND CONTROL, THE PEACE OFFICER(S) AFORESAID, ARE HEREBY COMMANDED (TO ENTER WITHOUT ANNOUNCEMENT OF AUTHORITY AND PURPOSE) ( BETWEEN THE HOURS OF 7 A.M. AND 8 P.M .) (AND A NIGHTTIME SEARCH OUTSIDE OF THOSE HOURS) TO SEARCH THE DESCRIBED PREMISES) (THE DESCRIBED MOTOR VEHICLE) (THE PERSON OF AS ABOVE) FOR THE ABOVE-DESCRIBED PROPERTY AND THINGS, AND TO SEIZE SAID PROPERTY AND THINGS AND TO RETAIN THEM IN CUSTODY SUBJECT TO COURT ORDER AND ACCORDING TO LAW.

BY THE COURT

Dated [redacted]

[redacted]

JUDGE OF DISTRICT COURT [redacted]

OCT 12 RECD
5sp.

Case # 01-20574



STATE OF MINNESOTA, COUNTY OF [redacted] Dakota District Ct COURT

**RECEIPT, INVENTORY AND RETURN**

I, Deputy Peter Eastman, received the attached search warrant issued by the Honorable Mary. Pawlenty, on [redacted], ~~19~~ 2001, and have executed it as follows:

Pursuant to said warrant, on [redacted], ~~19~~ 2001, at [redacted] o'clock [redacted] m., I searched the (premises) (motor vehicle) (person) described in said warrant, and left a true and correct copy of said warrant (with) (in) (at) 13831 Echo Park Ct., Burnsville, MN.

I took into custody the property and things listed below: (attach and identify additional sheet if necessary)

PE#1 - $753.00 U.S. Currency - from Gutierrez - (FBI)
PE#2 - Wallet and Id to Gutierrez - " " - (FBI)
PE#3 - 2 cell phones and scanner - kitchen table - (BC)
PE#4 - Fanny pack and contents - belonging to Guiterrez - BC
PE#5 - Back pack - Hall closet downstairs) kitchen table
PE#5A - Plastic bag susp. meth. - from PE#5
PE#5B - " " " " " - " "
PE#5C - " " " " " - " "
PE#5D - Plastic bag susp cocaine - " "
PE#5E - Plastic bag unknown substance " "
PE#5F - Plastic bag susp. marj. " "
PE#6 - Brief case - behind couch Living room
PE#6A - Misc contents - from PE#6
PE#6B - 9mm Glock ser#HZ166US & mag full - from PE#6
PE#6C - Mag loaded for 9mm - from PE#6
PE#6D - Misc. jewelry - from PE#6
PE#6E - $4000.00 U.S. Currency - from PE#6
PE#7 - duffle bag - from master bedroom
PE#8 - $ watch's - from kitchen
PE#9 - Misc money orders kitchen

Strike when appropriate:

- I left a receipt for the property and things listed above with a copy of the warrant.
- ~~None of the items set forth in the search warrant were found.~~
- I shall (retain) or (deliver) custody of said property as directed by Court order.

I, Peter Eastman, being first duly sworn, upon oath, depose and say that I have read the foregoing receipt, inventory and return and the matters stated are true and correct, except as to such matters stated therein on information and belief, and as to those, I believe them to be true.

Subscribed and sworn to before me this [redacted]

ANNE M. CARDENAS
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-2005

Notary Public, County, Minn.

My commission expires 1-31-05

Anne M Cardenas
Signature

COURT - WHITE COPY • PROS. ATTY - YELLOW COPY • PEACE OFFICER - PINK COPY • PREMISES/PERSON - GOLD COPY

ASD:gh

# *United States District Court*

STATE AND DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA
v.
GEORGE ANTHONY GUTIERREZ
a/k/a
Gregorio Antonio Gutierrez

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 01-MG-359 ESS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 10, 2001 in Dakota County, in the State and District of Minnesota defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess, with the intent to distribute, approximately one kilogram of methamphetamine and approximately 650 grams of cocaine, controlled substances,

in violation of Title 21 United States Code, Section(s) 841(a)(1).

I further state that I am a(n) DEA Task Force Officer (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

[signature]
Signature of Complainant
Steve Nusbaum
DEA Task Force

Sworn to before me, and subscribed in my presence,

Oct. 17, 2001 at Minneapolis, MN
Date City and State

E.S. Swearingen, U.S. Magistrate Judge [signature]
Name & Title of Judicial Officer Signature of Judicial Officer

ASD:gn

4 pgs on Indictment

# *United States District Court*

STATE AND DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA
v.
GEORGE ANTHONY GUTIERREZ
a/k/a
Gregorio Antonio Gutierrez

## WARRANT FOR ARREST

CASE NUMBER: 01-MG-359 ESS

TO: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest GEORGE ANTHONY GUTIERREZ
name

and bring him forthwith to the nearest magistrate to answer a(n)

☐ Indictment ☐ Information ☒ Complaint ☐ Order of court ☐ Violation Notice ☐ Probation Violation Petition

charging him with (brief description of offense)

[redacted] in Dakota County, in the State and District of Minnesota, the defendant did knowingly and intentionally possess, with the intent to distribute, approximately one kilogram of methamphetamine and approximately 650 grams of cocaine, controlled substances,

in violation of Title 21 United States Code, Section(s) 841(a)(1)

| | |
|---|---|
| E.S. Swearingen | U.S. MAGISTRATE JUDGE |
| NAME OF ISSUING OFFICER | TITLE OF ISSUING OFFICER |
| E.S. Swearingen (signature) | 10/17/01 Minneapolis, MN |
| SIGNATURE OF ISSUING OFFICER | DATE AND LOCATION |

Bail fixed at $________________ by________________

### RETURN

This warrant was received and executed with the arrest of the above-named defendant at ________________

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

STATE OF MINNESOTA )
) ss. **AFFIDAVIT OF STEVE NUSBAUM**
COUNTY OF HENNEPIN )

Your Affiant, Steve Nusbaum, being first duly sworn under oath, states as follows:

1. I am a Special Agent with the Immigration and Naturalization Service (INS) and have been so employed for more than twenty years. I am presently assigned to the Drug Enforcement Administration (DEA) Task Force, in Minneapolis, Minnesota. I have conducted numerous federal narcotics investigations through out my career as an investigator. This affidavit is based upon my own personal knowledge and information provided to me by other law enforcement officers involved in this investigation.

2. In October 2001, officers from the Ramsey County Sheriff's Department narcotics unit were conducting an investigation into the narcotics trafficking activities of an individual known as GEORGE ANTHONY GUTIERREZ.

3. [redacted], officers obtained and executed a state search warrant for Gutierrez's residence located at 1381 Echo Park Court, in Burnsville, Minnesota. During this search, officers recovered approximately one kilogram of methamphetamine and 650 grams of cocaine from a backpack in a closet in a hallway area of the residence. Officers also recovered a 9 millimeter Glock handgun, $4,000 in U.S. currency, and books and notes on manufacturing methamphetamine inside a brief case behind the couch in the living room area.

4. The narcotics recovered from the apartment was field tested positive for cocaine and methamphetamine by the officers during the execution of the search.

Further your Affiant sayeth not.

STEVE NUSBAUM, Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me
this 17th day of Oct., 2001

E.S. SWEARINGEN
United States Magistrate Judge

4 pages on Indictment

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** Cr 01-331 (ADM/AJB) |
| Plaintiff, | |
| | (18 U.S.C. § 924(c)(1)(A)) |
| v. | (21 U.S.C. § 841(a)(1)) |
| | (21 U.S.C. § 841(b)(1)(A)) |
| GEORGE ANTHONY GUTIERREZ, | (21 U.S.C. § 841(b)(1)(B)) |
| a/k/a | (21 U.S.C. § 853(a)(1)) |
| GREGORIO ANTONIO GUTIERREZ, | (21 U.S.C. § 853(a)(2)) |
| Defendant. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

**COUNT 1**

(Possession With Intent To Distribute a Controlled Substance)

On or about [redacted] in the State and District of Minnesota, the defendant,

GEORGE ANTHONY GUTIERREZ,
a/k/a
GREGORIO ANTONIO GUTIERREZ

knowingly and intentionally possessed with intent to distribute, more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

**COUNT 2**

(Possession With Intent To Distribute a Controlled Substance)

On or about [redacted]0, 2001, in the State and District of Minnesota, the defendant,

FILED NOV 14 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

GEORGE ANTHONY GUTIERREZ,
a/k/a
GREGORIO ANTONIO GUTIERREZ

knowingly and intentionally possessed with intent to distribute, more than 500 grams of a mixture and substance containing a detectable amount of cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

**COUNT 3**

(Use Of A Firearm During A Drug Trafficking Offense)

On or about [redacted], in the State and District of Minnesota, the defendant,

GEORGE ANTHONY GUTIERREZ,
a/k/a
GREGORIO ANTONIO GUTIERREZ,

knowingly used and carried a firearm during and in relation to a drug trafficking crime, and possessed a firearm in furtherance of a drug trafficking crime, to wit, Possession with Intent to Distribute a Controlled Substance, for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c)(1)(A).

**Forfeiture Allegations**

Counts 1 and 2 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853(a)(1) and (2).

As a result of the foregoing offenses, Defendant George Anthony Gutierrez shall forfeit to the United States pursuant to Title 21, United States Code, Sections 853(a)(1) and (2), all of his right, title and interest in any and all property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts 1 and 2 of this Indictment, including but not limited to the following:

Approximately $4,753.00 in United States currency, recovered on or about [redacted], at 13831 Echo Park Court, Burnsville, Minnesota; in that such sums in aggregate were received in exchange for or intended to be exchanged for a controlled substance or is traceable thereto.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of Title 21, United States Code, Sections 841(a), 853(a)(1) and (2).

A TRUE BILL

UNITED STATES ATTORNEY

FOREPERSON

A. Yeah. It's a front entryway, a kitchen and dining area and living room area and a stairway upstairs.

Q. So if you were even in the kitchen area, you could hear what was said in the living room; right?

A. Unless I was engaged in some other conversation or some other activity.

Q. Everything was pretty quiet at the time. But if nobody was speaking, you could hear; right?

A. It would depend on how loud the conversation was.

THE DEFENDANT: Okay. All right. No further questions.

THE COURT: Mr. Brown, do you have any follow-up?

MR. BROWN: No, sir, not at this time.

THE COURT: You may step down.

THE WITNESS: Thank you.

(Witness excused.)

MR. BROWN: Your Honor, we would call Deputy Eastman to the stand.

Your Honor, for the record, actually, it turns out I do have a copy of the warrant and application. I can provide a copy and bring it to the Court's attention.

THE COURT: [redacted]?

THE DEFENDANT: Judge, I'm sorry?

[redacted].

[redacted]. I said yes because Grau mislead me and told me I had one

THE COURT: Is that the copy that you're going to leave with me, or do you want us to make a copy?

MR. BROWN: I can leave you this copy. I know I have another here someplace.

THE COURT: We'll mark that Exhibit 1. That will be received.

MR. BROWN: I'm going to offer another one. I'll make it Exhibit 2.

THE COURT: All right. We'll make it Exhibit 2, and it will be received.

Would you kindly come up and be sworn.

(Witness sworn.)

THE COURT: I would like you to turn to the court reporter and provide the court reporter with your full name and the spelling of your last name.

THE WITNESS: Peter James Eastman, E-a-s-t-m-a-n.

THE COURT: You may inquire.

**PETER JAMES EASTMAN,**

being first duly sworn, was examined and testified as follows:

**DIRECT EXAMINATION**

BY MR. BROWN:

Q. Deputy Eastman, how are you employed?

# AFFIDAVIT OF FACT

RECEIVED BY MAIL
MAR 0 9 2005
CLERK US DIST COURT MINNEAPOLIS MN

My name is George Anthony Gutierrez.

I was arrested on 10 October 2001 by the FBI Fugitive Task Force from Minnesota for a federal warrant out of San Antonio Texas issued by US Customs. The time of my arrest was exactly 1:30 pm. Also, Ramsey County Sheriffs narcotic officer, Pete Eastman, came into the residence approximately 20 minutes later at about 1:50 pm. I asked for a search warrant about 1:55 pm. Pete Eastman finally produced the warrant about 30 minutes to 50 minutes later which would put the time at about 2:25 to 2:45 pm on 10 October 2001.

When the FBI Task Force forced entry, I wastrying to open the door for them. When they broke the door down, I was in the hall-way entrance to the door. Ramsey County Sheriff, Pete Eastman, claims that he enteredon the 11th of October. It is my true belief and you can see clearly that the evidence clearly shows what Pete Eastman really did is search the house on the 10th of October 2001. He arrested me and went back on October 11th, 2001 and obtained a real search warrant and application for an affidavit suuporting the search warrant as the court can see.

He obtained the search warrant at 2:35 pm on the 11th of October and the Invetory Reciept and Return form he signed off on was signed at 4:00 pm that same day.

On trial transcript page 46, line 11, he first says that he was in the house a total of 20 minutes. On the same page of the transcripts, on line 46, he says an hour to an hour and a half.

On the transcripts page 79, line 5, he states that it took him one to two minutes from the rear of the house which isa parking lot to get to the front. Also Mr. Eastman stateson page78, lines 6-7 that

6-7 that he and Sheriff Brad Otremba were assigned to secure the back of the residence. Also, St. Paul Police Department Officer Boll states on trial transcript page 52, lines 15-19 that he search two bedrooms upstairs. On transcript page 47, 6-11, it show in Officer boll's own words that they broke the door down and I was right there and was told to lie down. Pete Eastman states on TR transcript page 45, lines 3-4, that the FBI Task Force and Ramsey Coulty Sheriff's Departmentmet at a grocery store. St. Paul Officer Boll states that they met at an office building- transcript page 26, line 9.

Prosecutor, Tony Brown, states in transcript page 57, lines 14 and 17 "How many sales had you made on **October 9th?**". On transcript page 56, lines 23-24, he refers to "a controlled purchase of cocaine from the defendant the day before [the arrest]", clearly indicating that the arrest took place on October 10th.

On TR transcript page 102, lines 10-13, Pete Eastman says that he and DeputyBrad Otremba searched upstairs [redacted] as well as the garage later.

Prosecutor, Tony Brown, is involved in a coverup and fraud. On TR transcipt page 62, lines 20-23, he tells the court that "the search warrant is lacking".

Pete Eastman states on TR transcript page 43, line 9, that he had never worked with anyone from the FBI Fugitive Task Force so it is clear that he would at least have to intro duce himself to them. That would take some time.

Pete Eastman perjured himself on TR transcript page 27, line 22 when he states that the search warranthad been obtained already.

On TRtranscript page 23. lines 11-14, when I asked how long it took to get the search warrant, Tony Brown objected immediately, obviously not wanting me to have that information.

On TR transcript page 34, lines 21-22, Pete Eastman explains that his secretary, Ann Cardenas, made the transcripts from the recording of my interview at the Ramsey County Jail. Ann Cardenas also notorized the Inventory Property sheet on 12 October 2001. I anticipate that the government's response to this issue will be all about the time it took to accomplish all of this.

My question is, how could Pete Eastman obtain a search warrant at 2:35 pm and drive to a staging spot, introduce himself to the other officers, wait for confirmation that I was there, proced to the residence, search 2 bedrooms, kitchen, 2 bathrooms, patio, and garage all before signing the Inventory and Property Return sheet at 4:00 pm, a total of 1 hour and 25 minutes?

On TR transcript page 40, lines 19-24, Officer Boll states he met Mr. Eastman on October 9th. He also states on TR Transcript page 41, lines 1-8 that he had multiple communications with Mr. Eastman.

On TR transcript page 3 of the Application and Supporting Affidavit that he first communicated with Officer Boll on 11 October 2001.

Finally, it is my firm conviction that the prosector, Tony Brown, Ramsey county Sheriff Pete Eastman, and St. Paul Police Officer David Boll all conspired and executed a plan to commit fraudand perjury against me. I also believe my standyby counsel was involved as well.

The preceeding statement is the truth to the best of my knowledge under penalty of perjury.

March 4, 2005 Signed: George A. Gutierrez

George A. Gutierrez

State of Wisconsin/
Adams County
[signature]
Commission Expires 03/13/2005

(1)

Supporting TR Transcripts to Affadavit. Again Please Excuse me for All TR Transcripts I cite in Affadavit I couldn't make copy's Because I am Indingent and copy's cost 15¢ each! But I did research them thoroughtly. They are there in Government's Evidence! Here are a Few copys I was able to make! for Affadavit claims

Thank you
Respectfully,
George A. Gutierrez

Court received the transcript that he was given his Miranda warnings, and most of the questions actually asked and initiated during the course of that interview were asked and initiated by Mr. Gutierrez asking questions of Deputy Eastman, not Deputy Eastman asking him questions about the underlying facts of this case.

So the evidence that's before the Court showed that the statements made both during the transport and at the jail were voluntary statements made by Mr. Gutierrez about his role in this particular case.

With respect to the issue of probable cause for commencing the search, the Court has before it the affidavit in support of the search warrant and the search warrant. The Co[redacted]re act[redacted] T[redacted]e. [redacted]er probable cause contained within the affidavit, within the four corners of the warrant, for the Court to find that there was probable cause to execute that search in that particular case.

[redacted]at it[redacted]ty [redacted]re [redacted] particular case, but I think the Leon exception to the warrant would apply in this particular case.

each of these items submitted to a laboratory for chemical analysis?

Pete Eastman

A. Correct. The following day they would have been submitted to our -- or they were submitted to our lab at the (Ramsey County Sheriff's Department for preliminary testing.)

Q. Did you have -- you indicated that you searched the home. Did you search any other areas in the home other than the first floor, first level?

A. Yes. Deputy Brad ~~Otremba from the Ramsey County~~ County Sheriff's Department and I searched the ups~~tairs of~~ the residence, and ~~we had also~~ later on ~~had searched the~~ garage.

Q. And did you find any other indicators that controlled substances were present in the home?

A. Well, there was a large map, large duffel bag that was recovered from the master bedroom of the home, and through my training and experience had a very, very strong odor of cocaine to it.

Q. You indicated that you also have a, you work with a trained canine detection dog, correct?

A. Correct. The upstairs portion of the residence and the garage was searched first with my canine and then by hand. The canine indicated to the odor of a controlled substance at the duffel bag in the master bedroom.

about October 10th, October the 11th, did you have an occasion prior to the arrest of the defendant Mr. Gutierrez, what events occurred prior to you going to Mr. Gutierrez's home?

A. I had a meeting with Deputy Eastman and compared investigative notes regarding the case. I also did some planning over the telephone, had numerous conversations on the telephone.

Q. Now, with respect to the planning that you undertook, was there going to be an effort to execute a warrant on Mr. Gutierrez's residence?

A. Yes.

Q. And did you or the other officers meet at Mr. Gutierrez's residence to execute that warrant, or did you meet at some other location?

A. We met at a location of a nearby residence.

Q. And when you were at that meeting, that is your setup meeting, did you discuss your role, that is what roles that you and members of the task force were going to perform in the execution of the warrant versus the roles of the Ramsey County detectives?

A. Yes, we did.

Q. What role were the task force members going to undertake with respect to executing the warrant?

A. It was decided the task force members would compose an

in your role as a member of the task force to the Ramsey County Sheriff's Department?

A. Yes, I did.

Q. And have you had an opportunity -- could you tell the members of the grand jury -- I'm sorry. Could you tell the Members of the Jury, have you had an opportunity to come into contact with the Defendant George Gutierrez before today?

A. Yes, I have.

Q. Do you recall on what date it was Mr. Gutierrez first came to your attention?

A. I first gained knowledge of him on October 9 of 2001.

Q. Pursuant to your efforts with respect to Mr. Gutierrez, did you have occasion to work with the Ramsey County Sheriff's narcotics officer?

A. Yes I did.

Q. Who was that person?

A. Deputy Peter Eastman.

Q. What support, if any, did you and other members of the fugitive task force provide to Deputy Eastman on October 9th and October 10th of 2001?

A. If my recollection serves me correctly, the 9th and 10th, it was investigative support, and on October the 11th, it was an arrest.

Q. Now, with respect to the events that occurred on or

guess. How do you know Pete Eastman?
A. I met Deputy Pete Eastman on or about October the 9th, 2001, in relation to this case.
Q. Okay. But in our transcript, again, you said you had known him prior to that?
A. No, I don't believe so. You tried to suggest that I knew him then.
DEFENDANT GUTIERREZ: Again, Judge, it's in the transcript.
THE COURT: Well, it's your position he testified differently on a previous occasion?
DEFENDANT GUTIERREZ: Yes. That is correct, Your Honor.
THE COURT: Proceed with your questioning.
DEFENDANT GUTIERREZ: Thank you. Thank you, Judge.
BY DEFENDANT GUTIERREZ:
Q. So from last time you're saying you know the man from previous jobs that you've done together till now you're saying that you just met him on October 9th, there is a lot of inconsistencies.
Also, I would like to point out the fact that you told Mr. Brown that you, the way the drug buy went down was that you heard the phone -- that they called me personally, is that correct?